662 So.2d 69 (1995)
STATE of Louisiana
v.
Karl TAYLOR.
No. 95-KA-0271.
Court of Appeal of Louisiana, Fourth Circuit.
September 28, 1995.
*71 Harry F. Connick, District Attorney, Jack Peebles, Assistant District Attorney, New Orleans, for State of Louisiana/appellee.
Archie B. Creech, Orleans Indigent Defender Program, New Orleans, for defendant/relator.
Before CIACCIO, ARMSTRONG and LANDRIEU, JJ.
CIACCIO, Judge.
Defendant, Karl Taylor, was charged by bill of information with possession of cocaine with intent to distribute, R.S. 40:967, possession of marijuana with intent to distribute, R.S. 40:966, possession of a firearm by a convicted felon, R.S. 14:95.1, and possession of phencyclidine with intent to distribute, R.S. 40:966. Following a trial, a twelve-member jury found the defendant guilty as charged. Defendant filed motions for a post verdict judgment of acquittal and for new trial which were denied. He was sentenced on the cocaine charge to fifteen years at hard labor, on the marijuana charge to ten years at hard labor, on the firearms charge to ten years at hard labor without benefit of parole, probation or suspension of sentence and fined $1,000.00, and on the phencyclidine charge to fifteen years at hard labor. The sentences are to be served concurrently. The State filed a multiple bill to which the defendant pleaded guilty. The trial court re-sentenced the defendant, as to count one only, as a second offender, to fifteen years at hard labor. Defendant now appeals his conviction and sentence.
Our review of the record reveals no errors patent.
Officer Daniel Scanlan testified that on January 30, 1994, he responded to a call of narcotics activity and the presence of guns in the 2100 block of Lasalle Street. The caller identified the suspects as Sugar Man and Little Man. Scanlan knew Sugar Man from a past investigation that led to his conviction for narcotics trafficking. Scanlan knew Sugar Man's car, and had in fact arrested him for his other violation in the same area. He did not know Little Man. Other officers, including Jake Schnapp, Jr., Michael Harrison, and Gabe Favaroth, also answered the call. The officers were in full uniform and in marked vehicles. The officers approached from opposite directions with their headlights off. When they turned onto Lasalle Street, they put their high beams on. The defendant (who is not Sugar Man) was seated in the passenger seat of the car with the door open, and his leg outside the car. He was moving around in the car and looking down between his legs. When the high beams hit the car, the defendant hurried across the street to a porch where two people were talking. Scanlan could see the expression on the people's face change, and a conversation they had been having stopped. The officers pulled up alongside the car. The door was still open, and the interior light was on. Scanlan could immediately see narcotics on the floorboard, and a gun on the hump of the floor board. The narcotics appeared to be cocaine, marijuana, and a brown bottle commonly used to store PCP. He then called to the defendant that he was under arrest. The defendant then entered 2128 Lasalle Street. Scanlan, Favaroth, and Harrison entered the house. Scanlan found the defendant in the second room of the house as he was trying to shove money underneath the sofa. Scanlan handcuffed him and advised him of his rights. He recovered a beeper from the defendant, *72 and $267.00 in denominations commonly used in narcotics trafficking. Trained dogs searched the house, but no narcotics were found. Sugar Man's car was parked in front of the residence.
Schnapp testified to the same facts. He said he was driving the car in which Scanlan was riding. He did not chase the defendant into the house. Instead, he confiscated the narcotics: a brown bottle containing PCP, forty-four bags of cocaine, which totalled approximately a quarter ounce, and a bag of marijuana.
Harrison testified to the same facts. He said that Sugar Man lived in an efficiency apartment near the rear of 2128 Lasalle. He said that he did not know Little Man.
The State and defense stipulated to the fact that the seized narcotics were in fact cocaine, marijuana and PCP. The parties also stipulated that the defendant had a prior conviction for distribution of cocaine.
In his first assignment of error, defendant contends the trial court erred in denying his motion to suppress the evidence, arguing that the officers did not have reasonable suspicion to stop the defendant. We need not consider whether the officers had reasonable suspicion to stop the defendant and conduct the patdown search because the evidence seized in this case, the narcotics and the gun, were seized independent of any stop of the defendant. The items were discovered when the officers pulled up to the car, looked in through the open door, and saw the items. As we noted in State v. Tate, 623 So.2d 908, 917 (La.App. 4th Cir.1993), writ den. 629 So.2d 1126 and 1140 (1993):
For evidence to be seized under [the plain view] exception, "(1) there must be a prior justification for the intrusion into a protected area; (2) in the course of which the evidence is inadvertently discovered; and (3) where it is immediately apparently [sic] without close inspection that the items are evidence or contraband." State v. Hernandez, 410 So.2d 1381, 1383 (La.1982). See also State v. Taylor, 531 So.2d 1137 (La.App. 4th Cir.1988). In Horton v. California, 496 U.S. 128, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990), the Court held that evidence found in plain view need not have been found "inadvertently" in order to fall within this exception to the warrant requirement, although in most cases evidence seized pursuant to this exception will have been discovered inadvertently.[1]
Here, the defendant had walked away from the car, leaving the car door open, upon merely seeing the officers driving toward him down the street. It is immaterial whether the officers stopped the defendant prior to looking into the car or after looking inside, because the officers were on a public street and were able to see the contraband merely by looking into the car through the door which had been left open. Thus, the items were discovered in plain view, and any discussion as to whether the officers had reasonable suspicion to stop the defendant is irrelevant.
This assignment is without merit.
As his second assignment of error, the defendant argues the trial court erred in denying his motion for post verdict judgment of acquittal or in the alternative new trial. The defendant argues the evidence was insufficient to show that the defendant possessed the drugs and the gun.
When assessing the sufficiency of evidence to support a conviction, the appellate court must determine whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found proof beyond a reasonable doubt of each of the essential elements of the crime charged. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Jacobs, 504 So.2d 817 (La.1987).
*73 In addition, when circumstantial evidence forms the basis of the conviction, such evidence must consist of proof of collateral facts and circumstances from which the existence of the main fact may be inferred according to reason and common experience. State v. Shapiro, 431 So.2d 372 (La.1982). The elements must be proven such that every reasonable hypothesis of innocence is excluded. R.S. 15:438. R.S. 15:438 is not a separate test from Jackson v. Virginia, but rather is an evidentiary guideline to facilitate appellate review of whether a rational juror could have found a defendant guilty beyond a reasonable doubt. State v. Wright, 445 So.2d 1198 (La.1984). All evidence, direct and circumstantial, must meet the Jackson reasonable doubt standard. State v. Jacobs, supra.
To support a conviction for possession of drugs, the state must prove that the defendant knowingly possessed the drugs. The state need not prove that the defendant was in actual physical possession of the drugs; constructive possession, i.e., when the drugs are not in the physical possession of the person but are under his dominion and control, is sufficient to support a conviction. State v. Trahan, 425 So.2d 1222 (La.1983); State v. Coleman, 593 So.2d 907 (La.App. 4th Cir.1992). A person's dominion and control over the material may be shown by his knowledge that illegal drugs are in the area, his relationship with the one in actual possession, his access to the area where the drugs were found, and evidence that the area was frequented by drug users. State v. Reaux, 539 So.2d 105 (La.App. 4th Cir.1989). Further, the assessment of the credibility of the witnesses is the province of the trier of fact, and such assessment should be upheld unless it is clearly contrary to the evidence presented at trial. State v. Cashen, 544 So.2d 1268 (La.App. 4th Cir.1989).
In the case at bar, the defendant was the sole inhabitant of a car in which drugs were in plain view. When the officers approached, they saw the defendant looking down at the area where the drugs were found. When he saw the officers approach, the defendant quickly left the car. The area was a known area of drug trafficking, and the officers were in fact responding to a call that drug transactions were occurring. The seized substances tested positive for cocaine, marijuana and PCP. These facts are more than sufficient to show that the defendant knowingly possessed the drugs, and similarly that he knowingly possessed the gun which was also found in plain view in the same area of the car.
As the State presented sufficient evidence to prove possession, the court must consider whether it presented sufficient evidence to support a finding that the defendant intended to distribute the drugs. In State v. Hearold, 603 So.2d 731, 735-36 (La.1992), the Court discussed the factors which may be used to prove intent through circumstantial evidence:
Intent is a condition of mind which is usually proved by evidence of circumstances from which intent may be inferred. State v. Fuller, 414 So.2d 306 (La.1982); State v. Phillips, 412 So.2d 1061 (La.1982); La.Rev.Stat. 15:445. In State v. House, 325 So.2d 222 (La.1975), this court discussed certain factors which are useful in determining whether circumstantial evidence is sufficient to prove the intent to distribute a controlled dangerous substance. These factors include (1) whether the defendant ever distributed or attempted to distribute the drug; (2) whether the drug was in a form usually associated with possession for distribution to others; (3) whether the amount of drug created an inference of an intent to distribute; (4) whether expert or other testimony established that the amount of drug found in the defendant's possession is inconsistent with personal use only; and (5) whether there was any paraphernalia, such as baggies or scales, evidencing an intent to distribute....
In the absence of circumstances from which an intent to distribute may be inferred, mere possession of a drug does not amount to evidence of intent to distribute, unless the quantity is so large that no other inference is possible. State v. Greenway, 422 So.2d 1146 (La.1982); State v. Harveston, 389 So.2d 63 (La.1980); State v. Willis, 325 So.2d 227 (La.1975).
*74 In State v. Walker, 600 So.2d 911 (La.App. 4th Cir.1992) writ denied 625 So.2d 1056 (La.1993), the defendant dropped a plastic bag containing approximately twenty smaller bags of crack cocaine; $248.00 in cash was seized from his person. At trial the State's expert testified that the amount of cocaine, the packaging of it, and the amount of currency were all consistent with street-level sales of cocaine. We found the evidence sufficient to support the jury's finding that the defendant was guilty of attempted possession of cocaine with the intent to distribute.
In State v. Williams and Dilosa, 594 So.2d 476 (La.App. 4th Cir.1992), the defendants were found in possession of a small pile of cocaine, several baggies containing cocaine, various paraphernalia, a bottle of muriatic acid, and $560.00 in small bills. At the time they were in a virtually vacant apartment. The State's expert testified regarding the typical packaging of cocaine for retail sales and that such sales were often made from small unfurnished apartments or fortified houses. Also, the expert noted that muriatic acid is often kept near cocaine so that it can be destroyed quickly. We found this evidence sufficient to sustain the conviction of possession with the intent to distribute.
In State v. Thomas, 543 So.2d 540 (La. App. 4th Cir.1989) writ denied 548 So.2d 1229 (La.1989), we sustained a conviction for the possession of cocaine with the intent to distribute; the amount of the drugs found on the defendant was thirty-three individually wrapped bags of cocaine. See also State v. Johnson, 621 So.2d 903 (La.App. 4th Cir. 1993), writ denied 627 So.2d 661.
Recently, in State v. Cushenberry, 94-KA-1206, (La.App. 4th Cir. 1/31/95), 650 So.2d 783, we found the evidence sufficient to support a conviction for possession of cocaine with intent to distribute where the defendant had been standing outside a store drinking a beer. The shop owner had complained about loitering in the area. An officer tried to get the defendant's attention to tell him he was in violation of a city ordinance prohibiting drinking alcohol on the street from metal or glass containers. It was raining heavily, and the area was known as a drug trafficking area. The defendant ignored the officer. When the officer exited his car, the defendant ran into the store and threw down a bottle containing twenty-six rocks of cocaine. He was found to be in possession of $376.00. He told the officer that he was unemployed. At trial, the defendant testified that he had just been dropped off by a friend, and that he walked slowly into the store to avoid the rain. He said that his mother-in-law had given him the money to pay her rent. He denied using drugs, and said that the officer had showed him the bottle containing the cocaine. We found the jury had not erred in finding the officer more credible.
In this case, the defendant was in possession of forty-four bags of cocaine, in addition to an abundance of marijuana and PCP. The officers had been responding to a call that drug transactions were going on in the area at the time they found the defendant in possession of the drugs. No one else, except the two older people standing on their porch, was in the area. The defendant was in possession of a beeper and $267.00 in denominations often used in drug transactions. Under these facts there was sufficient evidence to support a conviction for possession of intent to distribute cocaine, marijuana and PCP.
This assignment is without merit.
The defendant has filed a pro se brief in which he argues that the State impermissibly referred to other crimes when it referred to him as a convicted felon. This assignment is without merit as the defendant's status as a convicted felon was an element of the crime of possession of a handgun by a convicted felon for which the defendant was on trial.
The defendant also argues that his sentence was excessive.
Article I, Sec. 20 of the Louisiana Constitution prohibits the imposition of excessive punishment. A sentence may be reviewed for excessiveness even though it is well within statutory guidelines. La.C.Cr.P. art. 881.2; State v. Cann, 471 So.2d 701 (La.1985). The imposition of a sentence may be unconstitutionally excessive if it is grossly out of proportion to the severity of the crime or is nothing more than the purposeless imposition *75 of pain and suffering. State v. Lobato, 603 So.2d 739 (La.1992); State v. Brogdon, 457 So.2d 616 (La.1984), cert. den. Brogdon v. Louisiana, 471 U.S. 1111, 105 S.Ct. 2345, 85 L.Ed.2d 862 (1985).
At the time the defendant was sentenced in this case, La.C.Cr.P. art. 894.1 required the trial court to consider the Sentencing Guidelines. However, Acts 1995, No. 942 repealed the Sentencing Guidelines.[2] The trial judge, nonetheless, clearly stated that he had considered the Sentencing Guidelines, and noted that the guidelines suggested the defendant be sentenced between seven to nine years. He arrived at this conclusion because the defendant had two prior convictions: a 1983 misdemeanor for a concealed weapon, and a 1990 conviction for distribution of cocaine. The trial judge noted that the present offense was of a similar character to the earlier cocaine conviction, and that the defendant was on probation at the time he was arrested for this offense. The State announced that it could file a multiple bill in this case, which it did, and the defendant pled guilty to the multiple bill. The trial judge noted that the offenses in this case involved both guns and money, a dangerous combination. He found that the defendant had knowingly created a risk of death or great bodily harm. He found that the defendant had the intent to distribute the drugs, and that he was in possession of a dangerous weapon. The trial judge reiterated that the defendant was persistently involved in similar offenses. Considering the foregoing statements, the trial judge adequately complied with C.Cr.P. art. 894.1.
Once adequate compliance with C.Cr.P. art. 894.1 was met, the trial judge was free to consider sentences given in similar cases in determining whether the sentence given in this particular case was excessive.
In State v. Cann, 471 So.2d 701 (La.1985), the defendant was found guilty of one count of distribution of marijuana and three counts of distribution of cocaine. He was sentenced to five years on the marijuana count, and to one thirty year and two fifteen year sentences on the cocaine counts. The defendant owned a store, which he ran with his wife, and supported his six children. He was a veteran and had several arrests and convictions as an adult for drug-related offenses. The sales of drugs to an undercover officer all occurred within a five-week period. Although the court found his sentences to be excessive in that they were ordered to be served consecutively, it also found that none of the sentences were individually excessive. The court ordered the sentences to be served concurrently.
In State v. Batista, 496 So.2d 1165 (La. App. 4th Cir.1986), we upheld a fifteen year sentence for the possession with the intent to distribute cocaine where the defendant attempted to shoot an officer during a struggle and where the defendant had several felony convictions and several arrests for drug and assault charges.
In State v. Strickland, 486 So.2d 1015 (La. App. 2d Cir.1986), the defendant's twenty year sentence for the possession with the intent to distribute cocaine was found to be excessive. The defendant had no prior criminal record and had distributed a small amount of cocaine on two occasions to undercover agents. The court found the sentence was excessive because the defendant was not a large scale drug dealer.
By contrast, in State v. Williams, 457 So.2d 902 (La.App. 3rd Cir.1984), writ den. 461 So.2d 313 (1984), the court upheld a *76 twenty year sentence imposed on a defendant convicted of the possession with the intent to distribute cocaine. The defendant had an extensive history of criminal activity, and there was evidence that he was a major dealer of numerous illegal drugs.
In this case, the defendant could have been sentenced as a second offender on the cocaine charge to sixty years at hard labor. He was sentenced to fifteen years on the cocaine charge, which is the minimum sentence he could have received. Moreover, in light of the fact that the earlier conviction was for the same offense, and in light of the fact that the defendant was in possession of a virtual cornucopia of drugs, and possessed a gun, we do not find his sentence to be excessive.
This assignment is without merit.
Lastly, the defendant argues he was denied effective assistance of counsel. Generally, the issue of ineffective assistance of counsel is a matter more properly addressed in an application for post conviction relief, filed in the trial court where a full evidentiary hearing can be conducted. State v. Prudholm, 446 So.2d 729 (La.1984); State v. Johnson, 557 So.2d 1030 (La.App. 4th Cir. 1990); State v. Reed, 483 So.2d 1278 (La.App. 4th Cir.1986). Only if the record discloses sufficient evidence to rule on the merits of the claim do the interests of judicial economy justify consideration of the issues on appeal. State v. Seiss, 428 So.2d 444 (La.1983); State v. Ratcliff, 416 So.2d 528 (La.1982); State v. Garland, 482 So.2d 133 (La.App. 4th Cir. 1986); State v. Landry, 499 So.2d 1320 (La. App. 4th Cir.1986).
The defendant's claim of ineffective assistance of counsel is to be assessed by the two part test of Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); State v. Fuller, 454 So.2d 119 (La.1984). The defendant must show that counsel's performance was deficient and that the deficiency prejudiced him. Counsel's performance is ineffective when it can be shown that he made errors so serious that counsel was not functioning as the "counsel" guaranteed to the defendant by the Sixth Amendment. Strickland, supra 466 U.S. at 686, 104 S.Ct. at 2064. Counsel's deficient performance will have prejudiced the defendant if he shows that the errors were so serious as to deprive him of a fair trial. To carry his burden, the defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, supra 466 U.S. at 693, 104 S.Ct. at 2068. The defendant must make both showings to prove that counsel was so ineffective as to require reversal. State v. Sparrow, 612 So.2d 191, 199 (La.App. 4th Cir.1992).
In this case, the defendant argues his counsel was deficient because he stipulated that the defendant was a convicted felon and allowed introduction of the criminalist's report and the certified conviction. The defendant presents absolutely no evidence that he was not convicted of the earlier offense. Thus, it is not clear how the defendant was prejudiced by the stipulation and introduction of evidence.
The defendant argues defense counsel should have cross-examined Scanlan more thoroughly and should have established inconsistencies in his testimony at the hearing on the motion to suppress and his testimony at trial. A review of the transcript of the motion hearing does not reveal any significant inconsistencies. Moreover, defense counsel extensively cross-examined Scanlan on why the defendant was not booked on the PCP charge until later, why the car was not impounded, and why no fingerprints were taken. His cross examination was adequate.
These assignments are without merit.
Accordingly, for the above reasons, defendant's conviction and sentence are affirmed.
AFFIRMED.
NOTES
[1] Horton concerned guns used in an armed robbery which were discovered during a search of the defendant's house pursuant to a warrant which listed only the stolen property as the items to be seized. The Court held that the guns were lawfully seized pursuant to the plain view exception even though the officers may have suspected the guns could have been found at the defendant's house. The Court reasoned that such seizure did not violate the defendant's privacy rights because the officers already had a justification for searching the defendant's house, and the discovery of the guns was made while the officers were conducting a warrant-backed search.
[2] We note that even before the passage of Acts 1995, No. 942, in State v. Smith, 93-0402 (La. 7/5/94), 639 So.2d 237, 240, the Louisiana Supreme Court held that:

(1) while a trial judge must consider the Guidelines, he has complete discretion to reject the Guidelines and impose any sentence which is not constitutionally excessive, but is within the statutory sentencing range for the crime of which a defendant has been convicted, so long as he states for the record the consideration taken into account and the factual basis for his imposition of that sentence, La.C.Cr.P. art. 894.1; and (2) where the trial judge has considered the Guidelines and imposed a sentence, adequately stating for the record the consideration taken into account and the factual basis for imposition of that sentence, an appellate court is limited to a review of the sentence imposed for constitutional excessiveness, without regard as to whether the trial judge either employed or deviated from the Guidelines. (Emphasis in original).