672 So.2d 1085 (1996)
STATE of Louisiana
v.
Norris HENDERSON.
No. 95-KA-0267.
Court of Appeal of Louisiana, Fourth Circuit.
April 3, 1996.
*1087 Laurie A. White, Angela A. Gerrets, Law Office of Laurie A. White, New Orleans, for Defendant/Appellant, Norris Henderson.
Harry F. Connick, District Attorney, Kim Madere Graham, Assistant District Attorney of Orleans Parish, New Orleans, for State, Appellee.
Before SCHOTT, C.J., and PLOTKIN and MURRAY, JJ.
MURRAY, Judge.
In 1977, Norris Henderson was convicted by a jury of the second degree murder of Betty Jean Joseph, which occurred on July 24, 1974. He was sentenced to life imprisonment without benefit of parole, probation or suspension of sentence for twenty years. State v. Henderson, 362 So.2d 1358 (La.1978). On application for post-conviction relief, he was granted a new trial based upon the previously unavailable initial police report which contained evidentiary discrepancies. Mr. Henderson was tried by the court in 1994 and was again found guilty as charged. He was again sentenced pursuant to the 1974 version of La.Rev.Stat.Ann. § 14:30.1, with credit for time served. He now appeals both his conviction and sentence.
The facts were stated in part in the earlier Supreme Court opinion:
As nineteen year old Betty Jean Joseph was riding her bicycle to summer school in New Orleans three men drove up in a burgundy Chevrolet automobile with a black vinyl top and tried to force her into the car. An eyewitness who saw this incident wrote down the car's license number, and reported the events to the police by telephone. As he returned from making his call he heard gunshots and saw one of the men pointing a gun at Ms. Joseph who was falling. All of the assailants then fled in the Chevrolet. While lying on the ground waiting for an ambulance the victim made oral statements to two school officials who arrived several minutes after the shooting. The victim was taken to the hospital and died about 12:00 p.m. the same day.... Because the eyewitness was not asked to identify the assailants at trial, Ms. Joseph's statement to the school officials assumed crucial importance.
Id. at 1361. At the second trial, testimony was also permitted to establish that while Ms. Joseph was in the hospital emergency room, she was questioned by a police officer. *1088 She told this officer, as she had told the two school officials, that Norris Henderson was one of her assailants. Additionally, documentary evidence was admitted at the second trial concerning the murder of Ms. Joseph's brother, Henry Joseph, on October 25, 1973. Betty Jean Joseph had given a written statement to the police that she was present when Norris Henderson and Robert Benjamin shot her brother, then threatened her if she did not keep quiet about it. By the time Ms. Joseph was shot, Robert Benjamin had pled guilty and was serving his sentence for killing Henry Joseph, but an arrest warrant for Norris Henderson was still outstanding.

Assignment of Error 5
Mr. Henderson contends that the trial court committed reversible error in allowing Assistant Coroner Dr. Ralph Lupin to testify, because Dr. Lupin did not prepare the autopsy protocol and was not present at Ms. Joseph's autopsy. He further argues that the coroner's report should not have been admitted because Dr. Lupin's medical specialty is obstetrics and gynecology, not pathology.
La.Code Crim.Proc.Ann. art. 105 specifically provides for the admission of the coroner's report as proof of death, and Comment (e) thereto permits the testimony of assistant coroners. As a physician, Dr. Lupin is qualified to interpret the autopsy findings regardless of the area in which he practices, and he was therefore properly qualified as an expert. State v. Straughter, 630 So.2d 884, 888 (La.App. 4th Cir.1993). Furthermore, Dr. Lupin testified that he signed the autopsy protocol based upon his determination that Betty Jean Joseph's death resulted from a homicide. This assignment of error is without merit.

Assignments of Error 1, 2, 3 and 4:
Ms. Joseph's statements to the school officials and the policeman was the only evidence linking Mr. Henderson to this shooting. Mr. Henderson contends that this testimony was inadmissible hearsay, in violation of his right to confront and cross-examine his accuser. He further argues that the trial court erred in prohibiting his impeachment of the victim's statements, contrary to the earlier ruling by the Supreme Court in his first appeal. Finally, Mr. Henderson asserts that since his impeaching evidence establishes that Ms. Joseph's identification was unreliable, there was insufficient evidence to convict him and his motion for acquittal should have been granted. We find no merit in these contentions.
As at the first trial, Reynard Alexander and Alexander Brumfield testified that while waiting for an ambulance to arrive, and in response to general questions, Ms. Joseph stated that Norris Henderson and his brother were two of the three men who attacked her. Mr. Alexander remembered that she was clearly "perplexed" because the people who shot her should have been in jail for the murder of her brother. However, he testified that under the circumstances, she was surprisingly coherent, not confused. Mr. Brumfield described Ms. Joseph's statements as "deliberate," saying that she would talk softly, then stop, then talk again, like she was having trouble breathing. At one point, Ms. Joseph asked if she were going to die; both men testified they tried to reassure her, telling her to hold on until the ambulance arrived.
Former patrolman Leland Comeaux testified that he and his partner, Detective Wayne Cooper, interviewed Betty Jean Joseph in the Charity Hospital emergency room x-ray department shortly after 9:00 a.m. It was obvious that Ms. Joseph was seriously wounded because she had a bullet sticking out of her abdomen, but she was conscious and the doctor said they could speak to her. When asked who had done this to her, she named Norris Henderson, then said something unintelligible. Mr. Comeaux did not know whether the victim had been given any medication, but his original report showed she went into surgery at 9:30 that morning. It was stipulated that, if called, Detective Wayne Cooper's testimony would be the same as Mr. Comeaux's.
Upon the State's motion, the court had ruled in advance of the second trial[1] that the *1089 hearsay testimony by Mr. Alexander and Mr. Brumfield was admissible pursuant to the Supreme Court's opinion on original appeal, which affirmed the determination that these statements by the victim were excited utterances. Although pre-trial arguments were made on the State's motion[2] to permit Mr. Comeaux's testimony, a ruling was deferred until the witness had been asked what Ms. Joseph told him. The court then ruled that the victim's statement in the hospital, which had been excluded from evidence at the first trial, was admissible as a dying declaration.
Louisiana Code of Evidence article 803(2) codifies the "excited utterance" exception to the hearsay rule and permits the admission into evidence of an out-of-court statement that is "relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." When the school officials' testimony was previously considered, the Supreme Court reviewed the factors to be weighed and found that "the evidence reasonably supports the trial judge's factual determination that Betty Jean Joseph was at the time of the offered statement under the influence of an exciting event." Henderson, 362 So.2d at 1362. There were no significant differences between the prior and current testimony by Mr. Alexander and Mr. Brumfield. Therefore, the hearsay evidence was properly admitted under the Article 803(2) exception. See also State v. Baker, 582 So.2d 1320, 1330-32 (La.App. 4th Cir.), writ denied, 590 So.2d 1197 (La.1991), cert. denied, 506 U.S. 818, 113 S.Ct. 62, 121 L.Ed.2d 30 (1992).
Similarly, we find no error in the admission of Mr. Comeaux's testimony under Article 804B(2) of the Code of Evidence. This article provides that a hearsay statement is admissible when "made by a declarant while believing that his death was imminent, concerning the cause or circumstances of what he believed to be his impending death." Since the declarant is unavailable to testify, the awareness that death approaches may be established by the circumstances under which the statement was made; it is not necessary that the victim express this belief. State v. Verrett, 419 So.2d 455, 457 (La.1982).
The evidence establishes that Ms. Joseph was shot four times, leaving a pool of blood on the scene. She had difficulty breathing immediately after the attack, causing her to stop and start as she tried to talk. The extent of her injuries were obviously serious, including a bullet still protruding from her abdomen as she was x-rayed, yet she remained conscious. Notwithstanding the reassurances of those around her, the fact that she asked if she were going to die indicates an awareness of impending death. In fact, Ms. Joseph died from her wounds three-and-a-half hours after her statement in the emergency room. As stated in State v. Augustus, 129 La. 617, 619, 56 So. 551, 552 (1911):
[N]o absolute rule can be laid down by which to decide with certainty whether the declarant, at the time of making his statement, really expected to die, yet when the wound is from its nature mortal, and when, as a matter of fact, the deceased shortly after making his statement died, the courts have uniformly held that the declarant really believed that death was impending, and his statement has been admitted as a dying declaration.
The trial court correctly admitted Mr. Comeaux's testimony under this standard.[3]
Mr. Henderson's contention that he was not permitted to impeach Ms. Joseph's identification is unsupported by the record. Despite defense counsel's failure to demonstrate unavailability, the trial court admitted into evidence an unsworn written statement *1090 by James Etienne, the first police officer to arrive at the scene of this shooting. According to this statement, when Officer Etienne asked Ms. Joseph who shot her, she said "Norris Henderson and Robert Benjamin." Since Robert Benjamin's incarceration at Angola on the day of this murder was confirmed, the admission of this statement supports Mr. Henderson's contention that Ms. Joseph was confused and in error when she named him as one of her assailants. The initial summary police report, which details the alleged link between Henry Joseph's murder and this shooting, was also admitted by the defense over the State's objection. Because the record and counsel's brief make no mention of any other possibly impeaching evidence, this argument is without merit.
Mr. Henderson next asserts that when such "crucial" and "devastating" hearsay testimony as that seen here is admitted, the Sixth Amendment right to confrontation of witnesses is violated, citing Park v. Huff, 493 F.2d 923 (5th Cir.1974). However, that opinion was reversed on rehearing en banc in Park v. Huff, 506 F.2d 849, 860 (5th Cir.), cert. denied, 423 U.S. 824, 96 S.Ct. 38, 46 L.Ed.2d 40 (1975). The Fifth Circuit en banc held that when evidence is admissible under a recognized exception to the hearsay rule, the Confrontation Clause is satisfied when the defendant is permitted to fully cross-examine the witness(es) to the out-of-court statement(s) at issue. This is in accord with Dutton v. Evans, 400 U.S. 74, 89, 91 S.Ct. 210, 220, 27 L.Ed.2d 213 (1970), also relied upon by Mr. Henderson, in which it was reiterated "that the mission of the Confrontation Clause is to advance a practical concern for the accuracy of the truth-determining process in criminal trials by assuring that `the trier of fact [has] a satisfactory basis for evaluating the truth of the prior statement.' California v. Green, 399 U.S. [149], at 161, 90 S.Ct. [1930], at 1936, 26 L.Ed.2d 489 [(1969)]."
In the present case, both Mr. Alexander and Mr. Brumfield were subjected to rigorous cross-examination by defense counsel concerning the exact substance of Ms. Joseph's statements, especially those suggesting a link between her assailants and those involved in her brother's murder. While neither could give a verbatim account of the victim's assertions, Mr. Alexander stated:
[W]hat she was telling me was that her brother had been murdered. And she had identified or testifiedor ID'd the persons who had slain her brother. And she was quite confused to how these persons could be on the street and do her some bodily harm when, obviously, she was under the impression that they were incarcerated somewhere.
When shown his formal statement taken by the police within hours of the shooting, he acknowledged stating "that the individuals that did this had been convicted of murdering her brother," but Mr. Alexander now recalled that the gist of Ms. Joseph's statements was that they should have been in jail, not that she knew they had been convicted and jailed. Neither Mr. Alexander nor Mr. Brumfield remembered any mention of the name "Robert Benjamin" or anything similar.
Thus, Mr. Henderson was not only able to test the credibility and reliability of those claiming to have heard Ms. Joseph identify him, but was permitted every opportunity to challenge the reliability of that identification and to present the circumstances under which the out-of-court declarant spoke. Since the testimony was admissible under recognized exceptions to the hearsay rule, no violation of the Sixth Amendment has been shown.
In his final argument regarding the hearsay testimony, Mr. Henderson contends that when the evidence is taken as a whole, his conviction is not supported by the evidence and the trial court erred as a matter of law in denying his motion for acquittal under La. Code Crim.Proc.Ann. art. 778. We disagree.
Article 778 provides in part:
In a trial by the judge alone the court shall enter a judgment of acquittal on one or more of the offenses charged, on its own motion or on that of the defendant, after the close of the state's evidence or of all the evidence, if the evidence is insufficient to sustain a conviction.
*1091 A motion brought under this article is properly overruled if the State has produced sufficient evidence to support each element of the crime charged. State v. Griffon, 448 So.2d 1287, 1293 (La.1984). A denial of the motion is reversible on appeal only if there is no evidence of an essential element of the crime. State v. Price, 454 So.2d 377, 378 (La.App. 4th Cir.), writ denied, 458 So.2d 126 (La.1984).
In evaluating the sufficiency of evidence to support a conviction, an appellate court must determine whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the defendant guilty beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Green, 588 So.2d 757 (La. App. 4th Cir.1991). Nevertheless, the reviewing court may not disregard its duty to consider whether the evidence is constitutionally sufficient simply because the record contains evidence that tends to support each fact necessary to constitute the crime. State v. Mussall, 523 So.2d 1305 (La.1988). The reviewing court is not permitted to consider just the evidence most favorable to the prosecution but must consider the record as a whole because that is what a rational trier of fact would do. If rational triers of fact could disagree as to the interpretation of the evidence, the rational trier's view of all the evidence most favorable to the prosecution must be adopted. The fact finder's discretion will be impinged upon only to the extent necessary to guarantee the fundamental protection of due process of law. Mussall, supra; Green, supra.
Mr. Henderson argues that because Ms. Joseph named Robert Benjamin as one of her assailants, her statements identifying him were totally discredited. While that is one possible interpretation, we find that the evidence, taken as a whole, supports the trial court's reliance upon the victim's identification of Mr. Henderson as one of her attackers. Only Officer Etienne, who arrived at the scene several minutes after the two school officials, reported hearing the name of Robert Benjamin. Both Mr. Alexander, who held Ms. Joseph's head in his lap until the ambulance arrived, as well as Mr. Brumfield were certain that Ms. Joseph named only "the Henderson brothers" and "Norris Henderson" as two of the gunmen. Additionally, since both of these witnesses testified that Ms. Joseph was trying to explain the link between this shooting and her brother's murder, the factfinder could reasonably infer that Robert Benjamin's name was mentioned in that context. Since Officer Etienne arrived later, the court could reasonably conclude that he had misunderstood the victim's statement. Thus, when all the surrounding circumstances of the hearsay testimony is considered, its probative value is sufficient to identify Norris Henderson as one of Ms. Joseph's killers.
Nor does the testimony of Mr. Henderson's stepsister that he was in California when this shooting occurred require a different conclusion. The trier of fact may accept or reject, in whole or in part, the testimony of any witness. State v. Silman, 95-0154, p. 12 (La. 11/27/95), 663 So.2d 27, 35; State v. Allen, 94-1895, p. 7 (La.App. 4th Cir. 9/15/95), 661 So.2d 1078, 1084. The resolution of such conflicting testimony goes to the weight rather than the sufficiency of the evidence. Allen, supra. Mr. Henderson's stepsister testified only that she was certain that she had moved to California on June 9, 1974, and that Mr. Henderson arrived from New Orleans shortly thereafter. She had no specific memory of July 24, 1974, but only "knew" he was in California that day because throughout that summer the family gathered everyday for lunch at their grandmother's apartment. We find no abuse of discretion in the trial court's rejection of this vague alibi testimony.
The evidence taken as a whole is sufficient to prove Mr. Henderson's guilt of second degree murder beyond a reasonable doubt. It was shown that Betty Jean Joseph died after being shot four times at close range, and that prior to her death she identified Norris Henderson as one of her killers. This assignment of error is without merit.

Assignment of error 6
Finally, Mr. Henderson contends that the specification of his life sentence that *1092 he "shall not be eligible for parole, probation or suspension of sentence for a period of twenty years," pursuant to La.Rev.Stat.Ann. § 14:30.1(2) as enacted by Acts 1973, No. 111 is vague and uncertain, and thus violates the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution because it conflicts with the provision found in La. Rev.Stat.Ann. § 15:574.4 B as enacted by Acts 1968, No. 191, that "[n]o prisoner serving a life sentence shall be eligible for parole consideration until his life sentence has been commuted to a fixed term of years." He argues that this presents an "irreconcilable conflict" under Busic v. United States, 446 U.S. 398, 100 S.Ct. 1747, 64 L.Ed.2d 381 (1980), and his sentence thus must be vacated.
We find no conflict in these statutes. As explained in Bosworth v. Whitley, 627 So.2d 629, 631 (La.1993), parole eligibility is determined by the sentence meted out upon conviction, which is different from eligibility for parole consideration, as regulated by § 15:574.4. A similar constitutional challenge was rejected in Bosworth, where the court found that those sentenced to life imprisonment, with no restrictions regarding parole eligibility, were not deprived of any constitutionally protected liberty interest by the commutation requirement of § 15:574.4. See also State v. Grant, 555 So.2d 528 (La. App. 4th Cir.1989), writ denied, 558 So.2d 602 (La.1990) [no conflict exists between sentencing provision of La.Rev.Stat.Ann. § 40:966(B), which does not restrict parole eligibility, and La.Rev.Stat.Ann. § 15:574.4(B)].
The record indicates Mr. Henderson was arrested May 8, 1975 and has been in custody since then. When he was sentenced on April 5, 1994 he was given credit for time served. He is therefore now eligible for parole, but must obtain a commutation in order to be considered for parole. This assignment of error is without merit.

Errors patent
A review of the record reveals no errors patent.
Having found no merit to Mr. Henderson's assigned errors, his conviction and sentence are affirmed.
AFFIRMED.
NOTES
[1] Mr. Henderson did not waive his right to trial by jury until the morning of trial.
[2] The motion was supported by transcript excerpts from Mr. Henderson's first trial.
[3] We note that in the opinion on Mr. Henderson's prior appeal, 362 So.2d at 1362, it was stated that, "Although [Ms. Joseph] was unaware that her wounds were fatal, ..." However, because then-Officer Comeaux's testimony had been excluded by the trial court, the issue of its admissibility was not before the Supreme Court. The statement in the prior opinion is therefore not a binding factual determination. In any case, the record establishes that a better predicate was laid at the second trial than at the first regarding Ms. Joseph's condition and demeanor.