703 So.2d 173 (1997)
STATE of Louisiana
v.
Charles NICHOLSON.
No. 96-KA-2110.
Court of Appeal of Louisiana, Fourth Circuit.
November 26, 1997.
*174 Dwight Doskey, New Orleans, for Charles Nicholson/Appellant.
Harry F. Connick, District Attorney, Val M. Solino, Assistant District Attorney, Orleans Parish, New Orleans, for State/Appellee.
Before BARRY, WALTZER and LANDRIEU, JJ.
BARRY, Judge.
The defendant was convicted of first degree murder which occurred during an attempted armed robbery. He was sentenced to life imprisonment without benefit of parole, probation or suspension of sentence.[1]
The defendant assigns five errors: 1) admitting statements made by the victims as "dying declarations"; 2) allowing evidence of another robbery under State v. Prieur; 3) denying a mistrial based on Det. Adams' reference to other crimes; 4) allowing the testimony of Det. Flot as to Nelson Tippen's (severed co-defendant) statement involving the defendant; and 5) allowing the State to refer to grand jury testimony. We affirm.

TESTIMONY
Lisa Westbrook testified that on February 18, 1995 at approximately 2:00 a.m. she and *175 Ted Alexander left Parkway Tavern on Canal Boulevard and headed for her car. She was seated on the passenger side when two armed men rushed up. One of the men was on the passenger side, while the other (identified as Nelson Tippen) approached Alexander who was about to enter the car. Westbrook described gestures indicating a demand, but could not hear words being exchanged between Alexander and Tippen. Tippen started laughing then shot Alexander. Tippen and the other man, identified as Anthony Richardson, ran to a waiting car. Alexander told Westbrook that he was shot and dying. Westbrook tried to use her car phone, then ran into Parkway Tavern for help. Due to the bright lighting, Westbrook saw Tippen shoot Alexander, picked Tippen out in a photo lineup, and identified him at trial. She could not identify the armed man on her side of the car or the man in the vehicle parked nearby.
Hunter McFadden, Ted Alexander's friend who was at the Tavern, ran out when Westbrook told him that Alexander had been shot. Alexander told McFadden that he was going to die, asked McFadden to take care of his mother, and asked whether he had legs because they were numb. McFadden rode with Alexander in the ambulance and visited him in the hospital during the next 16 days before he died. Alexander told McFadden that two boys or men approached him after he put Westbrook into the car. The robbers came from a vehicle on the side street which had a person inside and they demanded money and the car. Alexander said he turned to give them what they wanted and was fatally shot.
Carol Alexander, the victim's mother, testified that her son was paralyzed by the bullet and lived sixteen or seventeen days in the hospital before dying. The doctors told Ms. Alexander and Ted that pneumonia and blood clots had developed and Ted was not expected to live. Ted was conscious and told his mother that when the robbers approached him, he put his hands down and turned. The man in the waiting car said: "Take care of him, kill him, shoot him."
Sgt. Christy Williams testified that her participation in the case began the day of the shooting or the next day. She spoke to Alexander at the hospital and he told her the robbers ran up and demanded the keys to the car, he hesitated, and was shot. He saw a silver or gray "Hugo" or "Escort" type vehicle parked at the corner of Rosedale and Canal Boulevard and the person in the driver's seat was a black male about six feet tall. Sgt. Williams said Alexander and Westbrook did not tell her the person in the car said anything.
Susannah Burns testified that later the night of the shooting she and Dane Haygood, who were from Atlanta, left T.J. Quills near Tulane University to look for a friend who had gotten sick and wandered off. When she and Haygood were about one block from T.J.'s a van stopped and two men jumped out with guns and told them to give up what they had. One of the men was the defendant. The two men robbed them and a third man got out of the van and frisked Burns and Haygood. The robbers told the victims to run and they did. Burns and Haygood reported the robbery to a policeman at T.J.'s and one of the robbers, Tippen, was caught. Haygood's testimony was similar to that of Burns. Burns and Haygood identified Tippen at the scene and in court they identified the defendant as well as Tippen and Richardson.
Officer Stirgus testified that he and his partner chased the van which was abandoned. Tippen was apprehended and some of the stolen property was recovered. Burns and Haygood positively identified Tippen. A gun was seized from the van. Officer Slack testified that he caught Tippen and corroborated the testimony of Officer Stirgus.
Det. Flot testified that he was investigating a series of armed robberies. Tippen gave him a statement in which he named the defendant as one of the armed robbers. Warrants were obtained, the defendant was arrested at his residence, and he gave an oral statement to Det. Cade. Richardson's house was placed under surveillance, but he fled in a maroon Cressida. His mother contacted the police and he surrendered. Richardson brought Det. Cade to the maroon Cressida. A gun was found in the car and Richardson identified it as the weapon he carried the night of the armed robbery and *176 murder of Alexander. Det. Flot testified that he conducted a photo lineup in which Alexander identified Tippen and Richardson. Det. Adams testified that he and Det. Cade executed a warrant at the defendant's residence and found the defendant hiding underneath a stack of clothes in the laundry room.[2] The defendant was informed of his rights and gave a written statement which was transcribed and read to the jury.
Det. Cade testified that he and Det. Adams found the defendant who was advised of his rights and he voluntarily gave an oral statement. The defendant stated that he did not rob anyone; he just drove the car for Tippen and Richardson and never got out of the vehicle. According to Det. Cade, the defendant led police to the silver Toyota used in the attempted armed robbery/shooting and to Richardson's house. Det. Cade said that he also took Richardson's statement.
Richardson, a juvenile, surrendered and gave a statement which was admitted into evidence. He testified that the defendant and Tippen called him to commit a robbery and the defendant drove Richardson and Tippen in a Toyota to the Canal Boulevard area. The defendant gave him an unloaded .22 caliber gun with a defective barrel; Tippen had a loaded chrome .38 caliber revolver. The defendant stopped near Westbrook's car and ordered him and Tippen to rob Alexander and Westbrook. Tippen told Alexander to give him money, but when Alexander did not respond, he started to walk back to the car. Richardson testified that the defendant yelled at Tippen to shoot Alexander. Richardson said he heard the shot and Tippen jumped into the Toyota. The defendant drove off, they abandoned the Toyota, then switched to an Astrovan. Richardson admitted that they robbed Burns and Haygood. He and the defendant had guns and got out of the van; Tippen stayed inside the car. The defendant took money and watches. The defendant drove off, the police chased them, they abandoned the van, and ran away separately.
Richardson stated that he cooperated to avoid prosecution for two other armed robberies and to be prosecuted as a juvenile. He pleaded guilty as a juvenile to two counts of armed robbery of Alexander and Westbrook (prior to Alexander's death) and received a juvenile life sentence. Richardson said he was not charged for Alexander's murder or for the armed robberies of Burns and Haygood.
The defendant's statement was read to the jury. The defendant admitted being with Tippen and Richardson when Alexander was shot, but denied robbing Westbrook and Alexander or shooting Alexander. The defendant stated that Tippen and Richardson, who was driving, picked him up in a light gray Toyota Tercel and they did not discuss planning a robbery. The defendant said Richardson and Tippen got out to rob Westbrook and Alexander and he remained in the car. The defendant also admitted being with Tippen and Richardson in the van when Haygood and Burns were robbed. According to the defendant, Tippen and Richardson robbed the second couple, then got back into the van. The police chased them, they left the van, and they ran.

DYING DECLARATIONS
The defendant complains that the trial court erred by admitting testimony from Carol Alexander and Sgt. Williams as to statements made by Alexander before he died. Carol Alexander testified that Ted was conscious at the hospital and told her that a third man sitting in the car yelled to shoot and kill Ted. Sgt. Williams testified that she interviewed Ted at Charity Hospital. Ted told her that he saw the driver of the car from which the two men emerged. Ted said the driver was a black male about six feet tall (which matched the defendant's description). The defendant argues that there was no predicate to show that Ted knew he was dying when he made the statements. Ted was shot on February 18, 1995 and died on March 6, 1995.
La. C.E. art. 804 B(2) provides that a hearsay statement is admissible if it is a "statement made by a declarant [unavailable as a witness] while believing that his death *177 was imminent, concerning the cause or circumstances of what be believed to be his impending death." Such a statement may be admitted as a dying declaration if it was made when the declarant was conscious of his condition and aware of his approaching demise, even if the statement was elicited by questions. State v. Verrett, 419 So.2d 455 (La.1982); State v. Matthews, 95-1245 (La. App. 4 Cir. 8/21/96), 679 So.2d 977, writ denied 96-2332 (La.1/31/97), 687 So.2d 403. The victim need not express his awareness of death in direct terms; the necessary state of mind may be inferred from the circumstances surrounding the statement. State v. Henderson, 95-0267 (La.App. 4 Cir. 4/3/96), 672 So.2d 1085, writ denied 96-1160 (La.10/11/96), 680 So.2d 648.
The more serious the injury and the greater the impairment, the more probable is his belief that the end is near:
[N]o absolute rule can be laid down by which to decide with certainty whether the declarant, at the time of making his statement, really expected to die, yet when the wound is from its nature mortal, and when as a matter of fact, the deceased shortly after making his statement died, the courts have uniformly held that the declarant really believed that death was impending, and his statement has been admitted as a dying declaration.
State v. Matthews, 679 So.2d at 981, quoting State v. Augustus, 129 La. 617, 619, 56 So. 551, 552 (1911).
In State v. Gremillion, 542 So.2d 1074 (La.1989), the victim died of traumatic pancreatitis seventeen days and two surgeries after he was beaten. The court noted that the victim, who drove himself and a friend home after the injury and later checked into a hospital, was in great pain at the time of his statement to the deputy, but it did not appear that he was aware of impending death. His statement to a deputy was held inadmissible as a dying declaration.
In State v. Foote, 379 So.2d 1058 (La.1980), the victim's statements to a neighbor at the scene and to a deputy at the hospital were held admissible as dying declarations. The victim died eleven days after being shot six times. The victim, a veterinarian, told his neighbor that he was dying and remained comatose for much of the time before his death.
Alexander was shot during the armed robbery and became paralyzed. He could not feel his legs and had no control of bodily functions. Ted told Westbrook and McFadden right after the shooting that he was dying. Mrs. Alexander, Ted's mother, said that Ted's lung had collapsed and he was in "real critical condition." Alexander was bleeding internally and had tubes "coming out of his nose, his mouth, everywhere." According to Mrs. Alexander, the doctors told her and her son that due to blood clots and pneumonia he was not expected to live. He lived 16 days, but the record does not show if he was comatose. It is not clear when Ted talked to his mother about the shooting. Mrs. Alexander stated that Ted told her what happened, but she did not indicate whether he recounted the events on the night of the shooting or later.
Sgt. Williams testified that she interviewed Alexander at Charity Hospital, but did not specify the date. According to the State's motion to admit the dying declarations and the supplemental police report, Officer Williams spoke to Alexander on February 19, 1995, the day after the shooting.
The trial court concluded that Alexander made the statements when he believed death was imminent. We have no basis to disturb that decision.
We note that the statements were cumulative of other evidence. Richardson testified that the defendant was seated in the car and yelled to Tippen to shoot Ted Alexander. The defendant's statement also indicated that he was in the small gray car when the robbery/murder occurred. The dying statements did not contribute to the verdict.

OTHER CRIMES EVIDENCE
The defendant contends the trial court erred by allowing evidence of the robbery of Susannah Burns and Dane Haygood (which occurred 45 minutes after the robbery of Westbrook and Alexander) as Prieur evidence. He claims that the two robberies do *178 not have sufficient similarities and are not "signature crimes." According to Burns and Haygood, they were walking about a block from a bar looking for a friend when a van pulled up and two men jumped out with guns and robbed them. A third man frisked them. They were then told to run away.
La. C.E. art. 404(B)(1) provides:
B. Other crimes, wrongs, or acts. (1) Except as provided in Article 412 [rape shield law], evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, of the nature of any such evidence it intends to introduce at trial for such purposes, or when it relates to conduct that constitutes an integral part of the act or transaction that is the subject of the present proceeding.
After a Prieur hearing the trial court held that the State could introduce evidence of the Burns/Haygood robbery as well as another robbery at Tippen's trial. Tippen's defense counsel stipulated that Tippen was present at the scene of Alexander's murder so that identity was not an issue and the trial court declared that the other crimes evidence would not be allowed at Tippen's trial. The State's writ application was denied by this Court (96-K-0860), but the Supreme Court granted the State's application and declared that Tippen's stipulation of identity did not preclude the admission of the evidence for other relevant purposes under State v. Prieur. State v. Tippen, 96-0960 (La.4/18/96), 671 So.2d 915.
In general, evidence of other crimes is inadmissible in the guilt phase of a criminal trial. Admission of evidence that the defendant may have committed other crimes creates the risk the defendant will be convicted simply because he is a "bad person" and juror confusion may occur when collateral issues are presented. Additionally, a defendant may not be prepared to confront such evidence. State v. Code, 627 So.2d 1373 (La. 1993), cert. denied 511 U.S. 1100, 114 S.Ct. 1870, 128 L.Ed.2d 491 (1994).
Statutory and jurisprudential exceptions exist to this rule where the state offers evidence of other crimes for purposes other than to show the character of the defendant. State v. Jackson, 625 So.2d 146 (La.1993); State v. Code, 627 So.2d at 1381. In State v. Prieur, 277 So.2d 126 (La.1973), the procedure to be followed (formerly under La. 15:445 and 15:446now repealed) in order to use evidence of other crimes was set out. La. C.E. art. 1103 provided that the notice requirements and standards as to evidence under Prieur and its progeny were not overruled by the new Code of Evidence. Under Prieur, 277 So.2d at 129, the State had to prove by clear and convincing evidence that the defendant committed other crimes. However, La. C.E. art. 1104, which was added in 1994 (Acts 1994, 3rd Ex.Sess., No. 51, § 2), provides that the burden of proof is identical with that of Rule 404 of the Federal Rules of Evidence. Under the federal rule courts apply the lesser standard of whether the evidence would support such a finding. State v. Langley, 95-2029 (La.App. 4 Cir. 9/4/96), 680 So.2d 717, writ denied 96-2357 (La.2/7/97), 688 So.2d 498. According to State v. Crawford, 95-1352 (La.App. 3 Cir. 4/3/96), 672 So.2d 197, cert. denied 96-1126 (La.10/4/96), 679 So.2d 1379, which cites to Huddleston v. United States, 485 U.S. 681, 108 S.Ct. 1496, 99 L.Ed.2d 771 (1988), the leading case interpreting Fed. Rule 404, other crimes need only be proved by a preponderance of the evidence. In 1995 (Acts 1995, No. 1300, § 2) La. C.E. art. 1103 was repealed.
Evidence of similar acts independent of the act charged as the crime in the present case is admissible to show intent. State v. Crawford, 672 So.2d at 197, citing State v. Bolden, 257 La. 60, 241 So.2d 490 (1970). For other crimes evidence to be admitted to show intent, the element of intent must be an essential ingredient in the crime charged. Even when such independent relevance is shown, the probative value must outweigh its prejudicial effect. State v. *179 Mamon, 26,337 (La.App. 2 Cir. 12/16/94), 648 So.2d 1347, writ denied 95-0220 (La.6/2/95), 654 So.2d 1104. See also State v. Harris, 383 So.2d 1 (La.1980). In State v. Jackson, 625 So.2d at 146, the defendant's intent to molest his granddaughter was an essential element of the crime of molestation of a juvenile and evidence of similar behavior with his daughters was admissible. Evidence of other crimes is also permitted to prove guilty knowledge when proof of such is necessary to prove guilt. Such evidence is used to negate an innocent explanation. State v. Slayton, 338 So.2d 694 (La.1976).
In the present case the State had to prove the defendant's guilty knowledge and intent. In light of the defendant's statement to police that he was at the scene but did not participate in the robbery or murder, the State had to prove that the defendant was an active participant in the robbery/murder. The State proved defendant's involvement in the Burns/Haygood robbery (robbery of a couple near a bar late at night) based on the victims' identification of the defendant as one of the robbers. The victims also identified Tippen and Richardson. The Burns/Haygood robbery was committed 45 minutes after the Westbrook/Alexander attempted armed robbery/murder (attempted robbery of a couple near a bar late at night); three men were involved in both crimes.
We conclude that the evidence of the Burns/Haygood armed robbery was relevant to prove defendant's intent and active participation in this crime, not that he was a "bad person." The probative value of the testimony relating to the Burns/Haygood armed robbery outweighs any prejudicial effect.

MISTRIAL
The defendant contends that the trial court erred by denying a mistrial when Det. Adams made a reference to other crimes during defense counsel's questioning relating to the defendant's cooperation with the police and his statement. Det. Adams stated: "When I say he was cooperative, I mean he pointed out vehicles that were used in robberies." Later defense counsel requested a mistrial which was denied. The trial court stated that Det. Adams' comment was made in response to defense counsel's question about the defendant's cooperation after his arrest.
The defendant argues that it was not carelessness and inexperience that led Detective Adams to refer to other crimes, and the reference constitutes reversible error. The mandatory mistrial provisions of La.C.Cr.P. art. 770 apply only to a comment made within the hearing of the jury by a judge, a district attorney or a court official that refers directly or indirectly to another crime committed or alleged to have been committed by the defendant as to which evidence is not admissible. A police officer is not considered a court official under Article 770. Absent a showing of a pattern of unresponsive answers or improper intent by the prosecutor, a mistrial is not warranted. State v. Lee, 618 So.2d 551 (La.App. 4th Cir.1993), writ denied 624 So.2d 1222 (La.1993); State v. Tatum, 506 So.2d 584 (La.App. 4th Cir.1987).
The defendant cites State v. Schwartz, 354 So.2d 1332 (La.1978), in which the Supreme Court noted that an officer's gratuitous implication of the defendant in other crimes and the officer's recurring pattern of unresponsive answers in a number of cases would not be excused as inadvertent, unplanned or unexpected by the prosecutor. However, the case was reversed on other grounds.
The defendant argues that Det. Adams' testified as to inadmissible hearsay in a case 13 years ago (State v. Whitlock, 454 So.2d 871 (La.App. 4th Cir.1984)) shows a pattern, and his comment was not careless. That case many years ago, when Det. Adams was in training to be a homicide detective, was due to inexperience and does not show a pattern or improper intent on the part of the prosecutor. Such a brief response elicited by defense counsel does not entitle the defendant to a mandatory mistrial.
The applicable provision is La. C.C.P. art. 771, which provides:
In the following cases, upon the request of the defendant or the state, the court shall promptly admonish the jury to disregard a remark or comment made during the trial, or in argument within the hearing of the jury, when the remark is *180 irrelevant or immaterial and of such a nature that it might create prejudice against the defendant, or the state, in the mind of the jury:
(1) When the remark or comment is made by the judge, the district attorney, or a court official, and the remark is not within the scope of Article 770; or
(2) When the remark or comment is made by a witness or person other than the judge, district attorney, or a court official, regardless of whether the remark or comment is within the scope of Article 770.
In such cases, on motion of the defendant, the court may grant a mistrial if it is satisfied that an admonition is not sufficient to assure the defendant a fair trial.
The decision on whether to grant a mistrial or to give an admonition is within the sound discretion of the trial court. State v. Johnson, 587 So.2d 64 (La.App. 4th Cir.1991). See also La.C.Cr.P. art. 775. A mistrial is a drastic remedy. Except in cases where it is mandatory, a mistrial is warranted if substantial prejudice will result and which deprives the defendant of a fair trial. Id. The trial court's ruling on whether to grant a mistrial for a comment by a police officer referring to other crimes evidence should not be disturbed absent a clear abuse of discretion. State v. Manuel, 94-0087, 94-0088 (La. App. 4 Cir. 11/30/94), 646 So.2d 489. Errors are harmless unless the reviewing court is thoroughly convinced that the remarks inflamed the jury and contributed to the verdict. Id.
The trial court did not abuse its discretion as to Det. Adams' brief comment. In light of Richardson's testimony pinpointing defendant's involvement in the robbery and murder, the comment did not contribute to the verdict.

REFERENCE TO CO-DEFENDANT'S STATEMENT
The defendant argues that Det. Flot should not have been allowed to testify that Nelson Tippen, a non-witness and severed co-defendant, named the defendant as being involved in the shooting. Det. Flot stated that Tippen named his co-perpetrators and warrants were issued for the defendant and Richardson.
The defendant concedes that no objection was made to that testimony. Because no objection was lodged, appellate review is precluded. La.C.Cr.P. art. 841; La. C.E. art. 103.

REFERENCE TO GRAND JURY TESTIMONY
The defendant argues that the trial court erred by allowing the State to bolster the testimony of Richardson by asking him whether he gave the same testimony before the grand jury. There was no discussion of Richardson's actual grand jury testimony.
The defendant concedes that no objection was made. Appellate review of this issue is precluded in the absence of an objection. La.C.Cr.P. art. 841; La. La. C.E. art. 103.
A review of the record reveals no errors patent.
The defendant's conviction and sentence are affirmed.
AFFIRMED.
NOTES
[1] Nelson Tippen, co-defendant, was also indicted for the first degree murder and the trials were severed. Tippen was convicted of manslaughter and sentenced to forty years.
[2] A coward without a gun.