705 So.2d 1271 (1998)
STATE of Louisiana
v.
Winston WINN.
No. 97-K-2509.
Court of Appeal of Louisiana, Fourth Circuit.
January 14, 1998.
*1272 Harry F. Connick, District Attorney, Susan Erlanger Talbot, Maurice Landrieu, Assistant District Attorneys, New Orleans, for Relator.
Richard C. Teissier, New Orleans, for Respondent.
Before KLEES, WALTZER and MURRAY, JJ.
WALTZER, Judge.
The prosecution invokes our supervisory jurisdiction to review the trial court's rulings in regard to the admissibility of evidence of other crimes and the victim's dying declarations at the defendant's trial for second degree murder. The trial court denied these motions.

STATEMENT OF FACTS
On 17 March 1991, someone entered into the residence of Doris Hayes and shot her in the head while she was lying in bed. Ms. Hayes survived but remained in a coma for a period of time. When she came out of the coma, she was paralyzed and initially unable to communicate. Eventually she communicated through eye-blinking, hand-squeezing, and head-shaking, but she could only indicate "yes" or "no". After living in various health care facilities, she was released to the care of her mother. Some three years after the shooting, her mother questioned her about possible perpetrators. Ms. Hayes' mother testified that she responded affirmatively when asked if the defendant Winston Winn were the perpetrator. Ms. Hayes' mother testified that up to that time she had not thought to include the defendant's name when inquiring about the perpetrator because Ms. Hayes had ended her relationship with Winn sometime in the past, even though Ms. Hayes and Winn had three children together[1]. Ms. Hayes' mother testified that she tried contacting the police concerning this information, however, she was told that unless Ms.Hayes died, there was nothing the police could do about the situation.
Ms. Hayes remained with her mother until April 1996, when her mother could no longer care for her. When Ms. Hayes went to a health care facility, she was taught to communicate through the use of a special alphabet board. The victim indicated that *1273 Winn was the man who shot her in 1991. This information was not given to the police for two months, due to some sort of administrative problem. In June of 1996 Ms. Hayes chose Winn's picture from a photographic line-up as the person who shot her. Ms. Hayes' condition began to deteriorate, and she spent her remaining days in the hospital. She died 3 January 1997.

DISCUSSION

a. Prieur Evidence
The prosecution contends that the trial court erred by denying its motion to introduce evidence of another crime committed against the victim by the defendant, i.e. when he allegedly in 1988 shot into the front of the victim's door and fled. The prosecution asserts that this evidence is pertinent to show the defendant's intent to kill or injure Ms. Hayes and that the shooting was not an accident[2]. The prosecution sought to introduce this evidence under LSA-C.E.art. 404(B)(1). Generally, other crimes evidence is not admissible in a trial, primarily because of the risk that a jury may regard such evidence as proof that the defendant is a bad person and thus must have committed the charged crime, as well as the possibility that the defendant will not be able to defend adequately against such evidence. See State v. Code, 627 So.2d 1373 (La.1993), cert. den. Code v. Louisiana, 511 U.S. 1100, 114 S.Ct. 1870, 128 L.Ed.2d 491 (1994). However, such evidence has been found to be admissible only if certain conditions are met. In State v. Jackson, 625 So.2d 146, 149 (La.1993), our Supreme Court reiterated these conditions:
The state is required to prove that the defendant committed these other acts by clear and convincing evidence. State v. Davis, 449 So.2d 466 (La.1984); LSA-C.E.art.1103 [footnote omitted]. The state must, within a reasonable time before trial, provide written notice of its intent to use other acts or crimes evidence and describe these acts in sufficient detail. Likewise, the state must show that the evidence is neither repetitive nor cumulative, and is not being introduced to show that the defendant is of bad character. The court must, at the request of the defendant, offer a limiting instruction to the jury at the time the evidence is introduced. The court also must charge the jury at the close of the trial as to the limited purpose for the other crimes evidence and that the defendant cannot be convicted for any crime other than the one charge or any responsive offenses to it. State v. Prieur, 277 So.2d 126 (La.1973).
Although Jackson speaks of "clear and convincing" standard of proof, the test was amended in 1994 by LSA-C.E. art. 1104 to follow that found in Fed.R.Evid. 104(b), which was defined in United States v. Beechum, 582 F.2d 898 (5th Cir.1978), cert. den. Beechum v. U.S., 440 U.S. 920, 99 S.Ct. 1244, 59 L.Ed.2d 472 (1979), as being "whether the evidence would support such a finding by the jury". See State v. Langley, 95-2029 (La. App. 4 Cir. 9/4/96), 680 So.2d 717, writ denied 96-2357 (La.2/7/97), 688 So.2d 498. In addition, in Langley this court noted:
If the prosecution is using the other crimes evidence to show "identity" the law requires that the facts of the case be "so peculiarly distinctive that one must logically say they are the work of the same person." See State v. Carr, 620 So.2d 288 (La.App. 1st Cir.1993). If the state wishes to use this evidence to show the defendant's "intent", then the standard is lower, and the state must only show that the crimes are "similar". State v. Smith, 513 So.2d 438 (La.App.2nd Cir.1987).
Id., at p. 6, 680 So.2d at 721. In State v. Lewis, 95-0769, p.5 (La.App. 4 Cir.1/10/97), 687 So.2d 1056, 1059, writ denied 97-0328 (La.6/30/97), 696 So.2d 1004, this Court noted:
Before evidence of other crimes is admitted as proof of intent, three prerequisites must be satisfied: (1) the prior acts must be similar; (2) there must be a real genuine contested issue of intent at trial; and (3) the probative value of the evidence must outweigh its prejudicial effect. State *1274 v. Romero, 574 So.2d 330 (La.1990); State v. Kahey, 436 So.2d 475 (La.1983).
See also State v. Nicholson, 96-2110, p. 10 (La.App. 4 Cir.11/26/97), 703 So.2d 173, 178, where this Court stated: "Even when such independent relevance is shown, the probative value must outweigh its prejudicial effect."
Here, the police report concerning the 1988 incident reveals that the defendant was seen walking up to Ms. Hayes' residence, firing shots into the house, and then leaving. Ms. Hayes was not home during this incident, but apparently a neighbor recognized the defendant as the person responsible for the shooting. The defendant was arrested for illegal use of a firearm, but the charge was refused on 22 August 1988. The only evidence of this prior incident presented in the State's application is the police reports of the incidents, and it is not certain that these reports alone "would support such a finding by the jury" that the defendant committed the prior offenses. The State contends the trial court summarily denied its Prieur motion without allowing it to introduce any evidence of this prior incident. We find that as to this claim the State should be allowed to introduce evidence concerning its Prieur motion. Therefore, the prosecution's writ is GRANTED IN PART and the matter is REMANDED for the introduction of evidence so that a complete record is available in the event that further review is required by this Court.
b. Testimony Concerning Hearsay Representations by the Victim
The prosecution contends that the trial court erred by suppressing any evidence of the victim's representations that the defendant was the person who shot her. As noted above, these representations consisted of non-verbal indications, including head nodding to her mother in 1994 when her mother asked her if the defendant was the person who shot her and her identification of the defendant, through the use of an alphabet board in 1996, to personnel in a health care facility to which she had been transferred. The State argues that although the testimony concerning these representations would be hearsay, it would fall within either the dying declaration exception or the excited utterance exception. The prosecution urges us to find that this hearsay testimony is admissible "in the interests of justice", even though neither of the exceptions cited above apply.
LSA-C.E.art. 801(C) defines hearsay as "a statement, other than one made by the declarant while testifying at the present trial or hearing, offered in evidence to prove the truth of the matter asserted." Subpart A(2) provides that a "statement" includes "[n]onverbal conduct of a person, if it is intended by him as an assertion." LSA-C.E.art.802 provides: "Hearsay is not admissible except as otherwise provided by this Code or other legislation." The rule regarding the admissibility of dying declarations is found in LSA-C.E. art. 804. Specifically, Article 804(B)(2) requires that a dying declaration must be a "statement made by a declarant while believing that his death was imminent, concerning the cause or circumstances of what he believed to be his impending death."
In determining whether the declarant believed that her death was imminent, courts have looked not only to any actual words of the declarant as to this belief, but also to the circumstances surrounding the statement, to determine if the declarant actually believed her demise was imminent. In State v. Verrett, 419 So.2d 455, 457 (La.1982), which was decided prior to the enactment of the Code of Evidence, the Court noted: "However, the necessary state of mind may be inferred from the facts and circumstances surrounding the making of the declaration and the victim need not express this belief in direct terms." In Verrett, the victim had been stabbed in his residence and had stumbled to a nearby restaurant. He made a statement identifying the defendant as one of the men who stabbed him while trying to rob him. The victim died within five minutes of having made this statement. On appeal, the Court found that the victim's statement was a dying declaration, even though the victim did not state that he thought he was dying. The Court looked to the facts that he had been fatally stabbed in the heart, that the witnesses testified to his deteriorating condition, and that he died soon after making his statement. *1275 The Court did not believe that it was sacramental that the victim declare that he feels the end is near if such belief may be reasonably presumed from the facts and circumstances surrounding the declaration. The Court also held that ... "the more serious the injury and impairment of the declarant's physical condition, the more probable is his belief that the end is near." Verrett, 419 So.2d at 457, citing State v. Augustus, 129 La. 617, 56 So. 551 (1911), and G.Pugh, Louisiana Evidence Law, at p. 466 (1974).
In a case recently decided in this Court, the victim was shot and lingered in the hospital for sixteen days before dying. During the hospital stay, he made statements to his mother and to an investigating officer describing his assailants. State v. Nicholson, 96-2110 (La.App. 4 Cir. 11/26/97), 703 So.2d 173.
On appeal, this Court upheld the introductions of these statements as dying declarations, noting that the victim was paralyzed from the time of the shooting, that he was comatose during part of his hospital stay, and that doctors had told him and his mother that due to blood clots and pneumonia he was not expected to live. In State v. Matthews, 95-1245 (La.App. 4 Cir. 8/21/96), 679 So.2d 977, writ denied 96-2332 (La.1/31/97), 687 So.2d 403 the gunshot victim told witnesses who shot him because he owed the defendant money, but did not state that he knew he was dying. Our Court found that the statements were admissible as a dying declaration given the grave condition of the defendant at the time of the statements and his further statement to his mother that he loved her, made as he was being taken to the hospital and just before he lapsed into unconsciousness for the last time.
In State v. Henderson, 95-0267 (La.App. 4 Cir.4/3/96), 672 So.2d 1085, writ denied 96-1160 (La.10/11/96), 680 So.2d 648, our Court likewise found the statements made by the victim to police officers in the emergency room to be dying declarations. Although the victim did not state that she felt that the end was near, the Court considered the circumstances that she died in the emergency room, three and one half hours after the shooting. The victim had sustained four gunshot wounds, had lost a lot of blood, had difficulty breathing and talking, and had a bullet protruding from her abdomen.
Consistent in all of these cases was the evidence that the victim was aware of his or her impending death, even though the death might have occurred days later. Here, by contrast, the prosecution presented no evidence that the victim was aware of impending death, either in 1994 when she indicated to her mother that the defendant was the man who shot her, or in 1996 when she spelled his name to the health-care providers by using the alphabet board. Apparently, the victim's condition remained fairly constant once she was released into her mother's care, and she reentered a health-care facility in 1996 only because her mother's health declined and her mother could no longer care for her. It was not until July, 1996, three months after she spelled out the defendant's name on the alphabet board, that her condition worsened. Although her death ultimately resulted from the gunshot wound she received almost six years earlier, the prosecution presented no evidence that at the time she made the representations she was aware her death was imminent. As such, the representations cannot be said to have been made under the belief her death was imminent, and the trial court did not err by finding they were not admissible under the dying declaration exception.
The prosecution further argues that the victim's spelling of the defendant's name and her explanation that the shooting was due to drugs were "excited utterances" and thus were exceptions to the prohibition on the admission of hearsay testimony. As per LSA-C.E.art.803 (2), a statement is not excluded by the hearsay rule (regardless of the availability of the declarant) where it is "relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." See State v. Neville, 96-0137 (La.App. 4 Cir.5/21/97), 695 So.2d 534; State v. Henderson, supra. In Henderson the statements were made by the victim just after she had been shot. In Neville, the statements *1276 were made by witnesses to a purse snatching.
Here, the prosecution contends the "startling event" which rendered admissible the victim's representations to the health-care provider was the victim's realization that she could spell out a message on the alphabet board. The State argues the victim's learning a new mode of communication was such a "startling event" that it rendered the subsequent message admissible under this exception to the hearsay prohibition. However, as noted by the trial court in rejecting this theory, the message made by the victim was not a spontaneous exclamation made in connection with the "startling event", i.e. that she could now communicate more than a "yes" or "no" response. Rather, the message was the product of reflective thought, indeed several years of reflective thought, and thus it would not fall within the "excited utterance" exception.
Finally, the prosecution argues that even if the representations made by the victim to her mother in 1994 and to the health-care providers in 1996 are not admissible under either of the exceptions noted above, they still should be admissible because due to the circumstances of the case they are inherently reliable, and the admission of them would be in the interest of justice. In support of its assertion that a court may carve out such an exception, the prosecution cites State v. Gremillion, 542 So.2d 1074 (La. 1989). In that case, the victim made statements to a physician and to officers approximately nineteen hours after sustaining a beating in a bar. In these statements, he indicated three men unknown to him had caused his injuries. The victim died seventeen days later of traumatic pancreatitis, after having undergone two surgeries. The defendant, who was well-known by the victim, sought to introduce evidence of these statements as part of his defense. The trial court refused to allow their introduction, and the defendant was convicted of manslaughter. On appeal, the Court considered the statements and found they were not admissible as either res gestae or as excited utterances in that they were given so long after the beating had occurred. The Court also noted they could not be considered to be dying declarations because there was no evidence the victim was aware of his impending death at the time he made the statements[3]. However, the Court ruled they were admissible nonetheless due to their "reliability and trustworthy nature". The Court noted: "While hearsay should generally be excluded, if it is reliable and trustworthy and its exclusion would interfere with the defendant's constitutional right to present a defense, it should be admitted." Gremillion, 542 So.2d at 1078 (emphasis supplied). In so holding, the Court looked to LSA-C.E. art. 804(B)[4] as it existed at the time, which was limited to civil matters only, and applied it to criminal matters where the exclusion of evidence as hearsay would impair a defendant's right to present a defense, Gremillion, 542 So.2d at 1078.
Here, the State argues that this Court has the power under Gremillion to hold that testimony concerning the victim's representations would be admissible even though it would not fit within any hearsay exception. However, Gremillion`s holding was based upon a violation of the defendant's constitutional right to present his defense if the *1277 hearsay statements could not be admitted. Here, there will be no such violation of the defendant's rights if the testimony about the victim's representations is excluded. The statements could be used to convict the defendant. As such, the considerations of Gremillion are not present in this case.
Indeed, the trial court's reasons for judgment, which were read into the record at the 10 October ruling, indicate that the State failed to take adequate steps to obtain admissible evidence from the victim prior to her death, through either the police's failure to investigate the case in 1994 or the district attorney's failure to perpetuate the victim's "testimony" while she was dying.
We find that the holding in Gremillion was based upon a defendant's constitutional right to present a defense and has no application in the present case. The trial court did not err by refusing to extend Gremillion to allow the introduction of hearsay testimony in this case.
APPLICATION FOR WRIT OF CERTIORARI IS GRANTED. THE RULING OF THE TRIAL COURT WITH RESPECT TO THE ADMISSIBILITY OF HEARSAY TESTIMONY CONCERNING THE VICTIM'S REPRESENTATIONS IS AFFIRMED; AND THE CASE IS REMANDED TO ALLOW THE PROSECUTION TO PRESENT EVIDENCE CONCERNING THE PRIEUR ISSUE.
NOTES
[1] Apparently, Ms. Hayes' mother suspected the shooting was connected with Ms. Hayes' boyfriend at the time of the shooting, who was apparently selling drugs, possibly from Ms. Hayes' residence.
[2] The State asserts in brief that the defendant, when arrested on the second degree murder charge, told the police that the original charge (of attempted second degree murder) against Ms. Hayes had been dismissed because the shooting was an accident.
[3] The Court also rejected the theory they were admissible as business records because they were included in the police report.
[4] LSA-C.E. art. 804 B(6) as it existed at the time of Gremillion, provided:

In a civil case, a statement not specifically covered by any of the foregoing exceptions if the court determines that considering all pertinent circumstances in the particular case the statement is trustworthy, and the proponent of the evidence has adduced or made a reasonable effort to adduce all other admissible evidence to establish the fact to which the proffered statement relates and the proponent of the statement and the particulars of it, including the name and address of the declarant, sufficiently in advance of the trial or hearing to provide the adverse party with a fair opportunity to prepare to meet it. If, under the circumstances of a particular case, giving of this notice was not practicable or failure to give notice is found by the court to have been excusable, the court may authorize a delayed notice to be given, and in that event the opposing party is entitled to a recess, continuance, or other appropriate relief sufficient to enable him to prepare to meet the evidence. This provision was deleted in 1995.