941 So.2d 624 (2006)
STATE of Louisiana
v.
Christopher CALENDER.
No. 2006-K-0291.
Court of Appeal of Louisiana, Fourth Circuit.
September 20, 2006.
Eddie J. Jordan, Jr., District Attorney, Rhonda Goode-Douglas, Assistant District Attorney, Parish of Orleans, New Orleans, LA, for State of Louisiana.
D. Majeeda Snead, Supervising Attorney, Julia Autin, Student Practitioner, *625 Stephanie Bridges, Student Practitioner, Loyola Law Clinic, New Orleans, LA, for Defendant, Christopher Calender.
(Court composed of Judge CHARLES R. JONES, Judge DENNIS R. BAGNERIS, SR., Judge LEON A. CANNIZZARO, Jr.).
Judge, LEON A. CANNIZZARO, Jr.
This case involves a supervisory writ application by the State of Louisiana. The defendant, Christopher Calender, was indicted for the second-degree murder of Renard Carter. At issue in the State's writ application is whether the trial court judge correctly ruled that the statements made by Mr. Carter that Mr. Calender was the person who shot him were not admissible under the dying declaration exception to the hearsay rule.
Mr. Carter was shot at the housing project where he lived. He suffered gunshot wounds to his chest, back, leg, and arm.
According to the testimony of Renell Carter, Mr. Carter's sister, she arrived on the scene of the shooting shortly after her brother was shot. She testified that she asked him who had shot him, and he said that Chris shot him. She further asked whether a person she knew named Chris was the Chris who had shot him, and he said that it was the Chris who was associated with Gee[1], a nickname for Anthony Adams. Mr. Calender, who uses the name Chris, was subsequently identified by eyewitnesses to the shooting as the person who shot Mr. Carter.
Mr. Carter's cousin, Natasha Dixon, also testified that Mr. Carter identified his assailant as "Chris that stay on the third floor right there [of the housing project]" and said that "Geek that stay on the second floor [on the housing project]" had given Chris the gun that was used in the shooting. Ms. Dixon testified that she ran to her cousin as soon as she heard the gunshots. She saw that he was bleeding, and right after Mr. Carter told Ms. Dixon who had shot him, he "went to praying." She testified that Mr. Carter "said his Our Father prayer." Ms. Dixon prayed with Mr. Carter, and she said that "[h]e asked the Lord to come into his heart and for to cleanse him, forgive him for his sins." She further stated that he was on his knees with "the whole project" holding hands and praying around him. Ms. Dixon also testified that she thought "my cousin was going to make it because he was aware." She said that he was "real alert" until we got to the hospital.
New Orleans Police Department Detective Claude Nixon met with Mr. Carter at the hospital. Detective Nixon testified that Mr. Carter told him that Chris had shot him. He was unable to provide additional information because of "[t]he life saving procedures that were being employed." Detective Nixon testified that Mr. Carter was in "extreme pain and agony," that he "had a breathing apparatus on," and that he was "unable to really move his arms real well because of the gunshots."
La. C.E. art. 804(B)(2) provides that "[a] statement made by a declarant while believing that his death was imminent, concerning the cause of circumstances of what he believed to be his impending death" is "not excluded by the hearsay rule if the declarant is unavailable as a witness." In State v. Foote, 379 So.2d 1058 (La.1980), the Louisiana Supreme Court stated:
Dying declarations are admitted into evidence as an exception to the hearsay rule because the dead victim is not available to testify directly, and the murderer *626 might otherwise escape justice. Such statements are considered reliable if given by one who believes himself in imminent danger of death.
379 So.2d at 1060.
This Court in State v. Henderson, 95-0267 (La. 4 Cir. 4/3/96), 672 So.2d 1085, discussed the determination of whether or not the declarant believed at the time of making a statement that he was dying. This Court stated:
[N]o absolute rule can be laid down by which to decide with certainty whether the declarant, at the time of making his statement, really expected to die, yet when the wound is from its nature mortal, and when, as a matter of fact, the deceased shortly after making his statement died, the courts have uniformly held that the declarant really believed that death was impending, and his statement has been admitted as a dying declaration.
672 So.2d at 1089, quoting State v. Augustus, 129 La. 617, 619, 56 So. 551, 552 (1911).
In State v. Nicholson, 96-2110 (La.App. 4 Cir. 11/26/97), 703 So.2d 173, this Court stated that a statement, even if it is made in response to a question, may be admitted as a dying declaration if it was made when the declarant was conscious of his condition and aware of his approaching demise. 703 So.2d at 177. Further, the victim is not required to express his awareness of his impending death. Id. The victim's state of mind may be inferred from the circumstances under which the statement was made. Id. Finally, the more serious the injury and the greater the victim is impaired, the more probable it is that the victim believed that he was dying. Id.
In State v. Winn, 97-2509 (La.App. 4 Cir. 1/14/98), 705 So.2d 1271, 1274, this Court stated that "[i]n determining whether the declarant believed that her death was imminent, courts have looked not only to any actual words of the declarant as to this belief, but also to the circumstances surrounding the statement, to determine if the declarant actually believed her demise was imminent." Thus, the declarant's belief that he was dying can be determined not only by the declarant's statement that he believes death is impending, but also by an assessment of the circumstances under which the declaration was made.
Based on the foregoing, we find that the statements made by Mr. Carter implicating Mr. Calender in his death are properly admissible as exceptions to the hearsay rule. Mr. Carter was praying for forgiveness at the scene of the shooting, he was bleeding, and he had wounds that a reasonable person would believe to be fatal wounds. Although Ms. Dixon testified that she did not think that Mr. Carter was dying when he said that "Chris" shot him, her perception of the situation is irrelevant. Mr. Carter clearly indicated that he considered himself to be in imminent danger of dying when he was obviously trying to make peace with his maker by asking forgiveness for his sins. Additionally, when Mr. Carter told Detective Nixon that "Chris" shot him, the circumstances described by Detective Nixon clearly indicated that Mr. Carter's life was in grave danger. He was in a hospital, he was in agonizing pain, he was bleeding, emergency procedures were being performed on him in an attempt to save his life, his ability to move his arms was impaired as a result of his wounds, and his breathing was being artificially assisted. Any reasonable person in such a situation would believe that he was in danger of dying from his injuries.
The judgment of the trial court finding that the statements made to Ms. Dixon, Ms. Carter, and to Detective Nixon were not statements made under the belief of *627 impending death is reversed. We find that Mr. Carter's statements that Mr. Calender was the person who shot him were dying declarations of Mr. Carter and are admissible in evidence as an exception to the hearsay rule.
REVERSED.
JONES, J., dissents.
JONES, J., dissenting.
I find no error in the judgment of the district court. I, therefore, respectfully dissent.
NOTES
[1] The names Gee and Geek were both used in the transcripts to refer to the same person.